UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAVER COUNTY EMPLOYEES' RETIREMENT FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TILE SHOP HOLDINGS, INC., et al.,<br><br>Defendants. | Case No.16-mc-80076-JSC<br><br>**ORDER RE: GOTHAM'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 35 |

This miscellaneous action arises out of a discovery dispute in a putative securities class action pending in the United States District Court for the District of Minnesota. *See Beaver County Employers Retirement Fund v. Tile Shop Holdings*, Inc., No. 14-cv-786-ADM-TNL (D. Minn.). That lawsuit was initiated following the publication of a negative report about defendant Tile Shop Holdings, Inc. by Gotham City Research, LLC, an investor who shorted Tile Shop stock. Both Plaintiffs and Defendants served third-party subpoenas on Gotham and filed separate actions in this District seeking to compel Gotham's compliance. The Court related the actions and granted Plaintiffs' motion to compel in part, but denied Defendants' motion on the grounds that Defendants' subpoena was overbroad and the information sought was not relevant. (Dkt. No. 28.) Gotham now seeks its attorney's fees and costs from Defendants as a sanction under Federal Rule of Civil Procedure 45(d)(1). (Dkt. No. 35.) Having carefully considered the parties' arguments, the Court GRANTS the motion for sanctions, but orders supplemental briefing to address the amount of fees and costs.

**BACKGROUND**

Tile Shop is a specialty retailer of manufactured and natural stone tiles and related accessories. (Dkt. No. 2-5 at 8.[1]) In November 2013, Gotham, a company which "focuses on due diligence-based investing," published a report on its website regarding the Tile Shop entitled: "Tile Shop: Like Crazy Eddie's, but with an Undisclosed Related Party & a Chinese Twist." (Dkt. No. 2-1 at 35.) The Report disclosed that Tile Shop employee Fumitake Nishi owned Beijing Pingxiu ("BP"), Tile Shop's largest supplier, and that Nishi was the brother-in-law of Tile Shop CEO Robert Rucker. (*Id*. at 39; Dkt. No. 2-2 at 3.) The Report suggested that Tile Shop had not disclosed these relationships and that BP may only exist as a "phantom company" to allow Tile Shop to engage in accounting manipulations and overstatement of earnings. (Dkt. No. 2-2 at 3; 17.) Gotham had taken a short position in Tile Shop stock prior to issuance of the Report. (Dkt. No. 2-1 at 36.) In the aftermath of Gotham's report, Tile Shop stock price dropped by 39%. (Dkt. No. 2 at 11.) Tile Shop thereafter launched an internal investigation which concluded that the alleged relationships revealed in the Report were accurate, but that CEO Rucker did not have knowledge of his brother-in-law's involvement in BP. (*Id*.)

Plaintiffs' putative class action lawsuit, filed shortly after the stock drop, alleges that Tile Shop failed to disclose "several material, related-party relationships." (*Id*. at 6.) In particular, Plaintiffs allege that Tile Shop failed to disclose the relationship between Rucker and Nishi, the relationship between Nishi and BP, and Nishi's relationship with two other Tile Shop suppliers. Plaintiffs allege that Rucker and other Tile Shop executives either knew or should have known of Nishi's relationship with BP and these other suppliers. (*Id*. at 7.) They contend that Tile Shop's failure to disclose these relationships violated various securities laws as did the misleading and false statements Tile Shop made in its financial statements. (*Id*. at 37-Dkt. No. 2-1 at 13.)

As part of discovery in the underlying action, both Plaintiffs and Defendants served Gotham with subpoenas seeking documents and deposition testimony. Defendants issued two subpoenas which: (1) sought all documents relating to Gotham's Report, Tile Shop, Rucker,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

several other identified individuals, all of Gotham's communications with Plaintiffs, Plaintiffs' counsel and several others, and all trading records related to Tile Shop (Dkt. No. 2-5 at 16-34); and (2) sought deposition testimony regarding these and other topics including any posts Gotham made on any public websites relating to investing, the basis for Gotham's invocation of the journalist privilege, and any public or non-public statements Gotham may have made regarding Tile Shop or anyone affiliated with Tile Shop. (Dkt. No. 2-6 at 28-32.) Gotham objected to the subpoenas and met and conferred telephonically and in writing regarding its response. (Dkt. No. 35-1 at ¶¶ 2-13.) In doing so, Gotham advised Tile Shop that it did not have any responsive documents other than trading records, which it declined to produce.

Defendants responded that they would need a deposition to confirm that there were no other responsive documents. (Dkt. No. 35-2 at 29.) Gotham advised Defendants that in accordance with Rule 45 the appropriate venue for any motion to compel would be in the Northern District of California because that is where the witness resides, is employed, or regularly conducts business. (*Id*. at 34-35.) In response, Defendants replied: "Thank you for answering my question about where Gotham City and its intended witness regularly conduct business" and then went ahead and moved to compel compliance in the District of Delaware.[2] (*Id*. at 34, 39.) Upon receiving the motion to compel, Gotham again asked Defendants to reconsider filing in the Northern District of California instead. (Dkt. No. 35-1 at ¶ 16.) It was only after Gotham retained Delaware counsel and provided Defendants with a declaration from Daniel Yu, Gotham's founder, editor, and the author of the at-issue report, which repeated the statements previously made by Gotham regarding his residence and regular place of business, that Defendants withdrew their motion to compel in Delaware and filed in this District. (*Id*. at ¶¶ 19, 20.)

Once filed in this District, Defendants' motion to compel was related to the action Plaintiffs previously filed seeking to compel compliance with their subpoenas which was pending before the undersigned. *See Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc*., No. 16-80062. The Court subsequently denied Defendants' motion to compel on the grounds

---

[2] Plaintiffs, in contrast, withdrew their prior subpoena and reissued subpoenas in this District. (Dkt. No. 35-2 at 37.)

3

1  that the subpoena was overbroad and Defendants had failed to demonstrate the relevance of the
2  information sought, and granted Plaintiffs' motion in part and denied it in part. (Dkt. No. 28.)
3  Defendants filed a motion for relief from a non-dispositive pretrial order of a magistrate judge
4  which was denied by District Judge Alsup. (Dkt. Nos. 30; 34.) Gotham thereafter filed the now
5  pending motion for attorney's fees and costs under Federal Rule of Civil Procedure 45(d)(1).

## DISCUSSION

The Federal Rule governing third-party subpoenas provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Gotham contends that Defendants imposed an undue burden by issuing overly broad subpoenas for an improper purpose, refusing to engage in meaningful discussions regarding the scope of the subpoenas, moving to enforce the subpoenas in the District of Delaware despite being advised by Gotham that this District was the appropriate venue, and again refusing to engage in a meaningful meet and confer regarding the underlying fees request necessitating the filing of a fees motion at additional expense. Defendants' response is three-fold. First, they argue that the sanctions motion is untimely. Next, Defendants suggest that Gotham's motion misapplies the controlling law regarding Rule 45 sanctions. Finally, Defendants contend that even if the Court were to award fees, it should not award all of the fees sought here.

### A. The Motion for Sanctions is Timely

Defendants contend that under both Local Rule 7-8(d) and Federal Rule of Civil Procedure 54, Gotham was required to bring its motion within 14 days of judgment. This argument is unavailing, however, as no judgment was entered in this action. Rule 45(d)(1) does not include any time limit within which a motion for sanctions must be brought. Further, Gotham sought or at least reserved the right to seek fees in opposing Defendants' motion to compel. (Dkt. No. 12 at 24-25.) Gotham contends that it waited to bring a formal motion for fees until after Defendants' appeal of the order denying Defendants' motion to compel was resolved to see if Defendants

4

would again appeal to the Ninth Circuit Court of Appeals—which they did not. After the 30 days to appeal ran, Gotham contacted Defendants to meet and confer regarding the fee request, but received no response. (Dkt. No. 35-1 at ¶ 23.) Six weeks after contacting Defendants, Gotham moved for fees. (Dkt. No. 35.) Under these circumstances, Gotham's motion is timely.

### B. The Tile Shop Subpoenas Imposed an Undue Burden

A fee sanction pursuant to Rule 45(d)(1) is discretionary. *See Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). "Merely losing a motion to compel does not expose a party to Rule 45 sanctions." *Id.* (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425-27 (9th Cir. 2012)). "Similarly, while failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions. A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* Sanctions are appropriate here because both Defendants' conduct in pursuing the subpoenas and the subpoenas themselves imposed an undue burden on Gotham, was inconsistent with existing law and issued for an improper purpose.

First, despite being advised by Gotham that the venue for compliance would be San Francisco and that Gotham agreed to litigate any issues regarding compliance in the Northern District of California, Defendants issued their subpoenas seeking compliance in Delaware and brought a motion to compel compliance in the District of Delaware. (Dkt. No. 35-1 at ¶¶ 5-15; Dkt. No. 35-2 at 26-39.) Defendants later withdrew that motion and moved to compel in this Court, but only after Gotham hired local counsel in Delaware. Defendants thus needlessly multiplied Gotham's costs. *See Sec. & Exch. Comm'n v. Schooler*, No. 16-00517, 2016 WL 6821079, at *5 (D. Nev. Nov. 17, 2016) (awarding sanctions where the party "draft[ed] an overly broad subpoena; ma[de] absolutely no effort to narrow the requested documents when confronted by objections and a charge of over breadth by opposing counsel; [but] then agreeing to narrow the requests when faced with a hearing on a motion to quash the subpoena and order to meet and confer."); *see also Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 23 (D. D.C. 2015) (considering the

parties "meet and confer efforts" and whether the issuing party sought to narrowly tailor the information sought when determining whether the subpoena imposed an undue burden under Rule 45(d)(1)). Defendants offer no excuse for their prosecution of the subpoenas in Delaware after being placed on notice that the proper venue was San Francisco. This conduct was contrary to existing law.

Second, the subpoenas themselves were overbroad and sought irrelevant information. The subpoenas sought all documents relating to Gotham's Report, all documents relating to Tile Shop, Rucker, and several other identified individuals, all of Gotham's communications with Plaintiffs, Plaintiffs' counsel and several others, and all trading records related to Tile Shop, as well as deposition testimony regarding the same. Despite being advised that no documents existed other than the trading records, Defendants insisted upon a deposition to attest to this fact and to obtain information regarding any investigation, research, or analysis Gotham conducted prior to issuance of its report, as well as information about Gotham's trading history. Defendants contended that they sought this information to (1) prove that the Gotham Report statements were incorrect to rebut Plaintiff's loss causation theory, and (2) to assail Gotham's motives in publishing the report. However, as the Court held, Defendants do not need any information from Gotham about whether the Report's contents were inaccurate—they possess that information themselves. At oral argument, Defendants argued that they needed the information to rebut the Gotham Report statement that they had to restate their financials, but Defendants know whether they restated their financials; whether Gotham had information supporting its claim that they did is irrelevant. The Court found Defendants' argument that the trading records would "show Gotham's motivations and their basis for their report or why they published the report" likewise unavailing. (Dkt. No. 29 at 39:1-3.) Despite repeated questioning, Defendants could not identify how this evidence is relevant other than to say that their expert would use it to rebut the damages calculation. The Court rejected this circular logic as Defendants do not need third-party verification of their own actions. This conduct too was contrary to existing law. *See Mount Hope Church*, 705 F.3d at 428 (holding that subpoenas do not comply with existing law if they "request information that is wholly irrelevant under any reasonable legal theory") (internal citation and quotation marks

omitted).

The subpoenas were also issued for an improper purpose. As the Court noted at oral argument, the subpoenas appeared to be an attempt to "fish around to see if there is a basis for bringing a libel case against Gotham [which] is not an appropriate reason for the subpoena." (Dkt. No. 29 at 35:14-16.) Because Defendants did not and have not offered a basis for their "facially overbroad subpoenas," the Court concludes that they did not result from "normal advocacy," and instead, were inconsistent with existing law and for an improper purpose. *See Legal Voice*, 738 F.3d at 1185; *see also Mount Hope Church*, 705 F.3d at 429. The Court thus awards sanctions against Defendants pursuant to Rule 45(d)(1).

### C. Gotham's Request for Fees is Inadequately Documented

In its initial motion, Gotham sought $67,495.20 for legal costs incurred in defending against Defendants' motions to compel in Delaware and this Court. Defendants object on the grounds that Gotham seeks reimbursement for time spent opposing their motion to compel as well as the motion filed by the Plaintiffs. Gotham agrees to withdraw its request for fees for work spent on the motion brought by Plaintiffs, but have not otherwise offered to reduce their fees for work that reflects time spent on both Plaintiffs' and Defendants' motions. Gotham thus seeks a total of $69,570.20 in fees which includes the cost of preparing the reply.

The Court cannot determine the appropriate amount of fees because Gotham's fee request fails to comply with the procedural requirements of Civil Local Rule 54-5(b). In particular, the motion is not supported by a declaration or affidavit containing, "[a] statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained" or a "brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services." Moreover, many pages of the exhibit containing Gotham's fee records are redacted in whole or part. (Dkt. No. 35-2 at 102-133.)

Accordingly, Gotham shall supplement its motion for attorney's fees with the required information.

**CONCLUSION**

Gotham shall submit a supplemental filing in accordance with this Order within 10 days. Defendants' response, if any, shall be filed on or before January 5, 2017.

**IT IS SO ORDERED.**

Dated: December 13, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge